**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| LAUREN MAHLER, individually and on behalf of all others similarly situated, | ) ) | No. 20-10735 |
| | ) | |
| Plaintiff, | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| EVENFLO COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) ) | |

Plaintiff Lauren Mahler, individually and on behalf of all others similarly situated, through undersigned counsel, based upon her personal knowledge, upon information and belief, and investigation of her counsel, alleges as follows against Defendant Evenflo Company, Inc. ("Evenflo" or "Defendant"):

## I.    INTRODUCTION

1.    According to the Centers for Disease Control and Prevention ("CDC") "[m]otor vehicle injuries are a leading cause of death among children in the United States."[1] The CDC has stated, "[a]lways buckling children in age- and size-appropriate car seats, booster seats, and seat belts reduces serious and fatal injuries by up to 80%."[2]

2.    Side-impact collisions pose particular risks to children. "Side-impact crashes were responsible for more than a quarter of deaths of children under 15 killed in vehicle collisions in 2018. While less common than head-on crashes, they are especially dangerous because there's only a door between a child and an intruding vehicle."[3]

3.    Child safety seats are thus critically important to protecting children. Defendant, however, prioritized profits over child safety. In a drive to win market share and to compete with its rival Graco, Inc. in the burgeoning booster-seat market, Defendant falsely touted that its line of Big Kid booster seats were safe for children under the age of 4 and weighing as little as 30 pounds.

4.    But Evenflo's marketing was false. A February 6, 2020 ProPublica story revealed:

In February 2012, a safety engineer at Evenflo, one of the biggest sellers of children's booster seats, wanted the company to make a major

---

[1] *Child Passenger Safety: Get the Facts*, CDC, https://www.cdc.gov/motorvehiclesafety/ child_passenger_safety/cps-factsheet.html (citation omitted) (last visited Apr. 2, 2020).

[2] *Child Passenger Safety*, CDC, https://www.cdc.gov/motorvehiclesafety/ child_passenger_safety/index.html (last visited Apr. 2, 2020).**Error! Hyperlink reference not valid.**

[3] Patricia Callahan, *House Subcommittee Opens Investigation of Evenflo, Maker of "Big Kid" Booster Seats*, *ProPublica* (Feb. 12, 2020), https://www.propublica.org/article/house-subcommittee-opens-investigation-of-evenflo-maker-of-big-kid-booster-seats.

change to its instructions for parents. He recommended Evenflo stop selling booster seats for children who weigh less than 40 pounds.

Citing government research, the engineer, Eric Dahle, emailed high-ranking executives to tell them that children lighter than 40 pounds would be safer in car seats that use harnesses to hold their small bodies in place. Making the change would match Canadian regulations and better align with recommendations from the American Academy of Pediatrics.

A marketing executive "vetoed" Dahle's safety recommendation, an internal Evenflo record shows. Later that year, the subject came up again. The same executive, who had been promoted to vice president of marketing and product development, expressed his exasperation. "Why are we even talking about this?" he wrote in an email, adding, "I have looked at 40 lbs for the US numerous times and will not approve this."[4]

5.      Evenflo's marketing of the Big Kid booster seat was false and misleading in another important respect, as detailed by ProPublica: "Not only did it sell its seats for children under 40 pounds, but Evenflo touted its Big Kid boosters as 'SIDE IMPACT TESTED' without revealing that its own tests showed a child seated in its booster could be in grave danger in such a crash."[5]

6.      In its advertising materials, Evenflo touted those side-impact tests, claiming that they were rigorous and simulated realistic side-impact crashes. In fact, Evenflo designed its own side-impact crash standards. The Big Kid booster seat failed even those lax standards:

Evenflo's tests were anything but stringent . . . . The company's tests show that when child-sized crash dummies seated in Big Kid boosters were subjected to the forces of a T-bone collision, they were thrown far out of their shoulder belts. Evenflo's top booster seat engineer would later admit in a deposition if real children moved that way, they could suffer catastrophic head, neck and spinal injuries — or die."[6]

7.      While Evenflo made reassuring representations about the safety of its booster seat, its own testing demonstrated that when a child who belongs in a harness seat instead is subjected

---

[4] Daniela Porat & Patricia Callahan, *Evenflo, Maker of 'Big Kid' Booster, Put Profits over Child Safety*, ProPublica (Feb. 6, 2020), https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety.
[5] *Id.*
[6] *Id.*

to crash-level forces, it can cause injuries that Evenflo's own engineers describe as "lethal," as shown in internal testing videos:[7]



8.    Evenflo knew better. Evenflo claims to have a century of experience feeding, nurturing, and protecting children. In the "Safety" section of its website, Evenflo claims to prioritize safety, particularly in in testing of child car seats:

> Safety isn't just a word to us, it's in our DNA. For nearly 100 years Evenflo has been a leader in baby and juvenile products. **We rigorously test all of our products, repeatedly. Every bounce, twist, turn and latch is tested to make sure our products are safe, durable, convenient and comfortable**.

> Our approach to safety testing has been to not just meet the requirement, but to go above and beyond. An example of this is the fact that Evenflo tests all car seats to energy levels approximately twice that of the federal crash test standard.[8]

---

[7] *Test Videos Reveal How Evenflo Booster Seats Put Children at Risk*, YouTube (Feb. 6, 2020), https://youtu.be/fZFxVXa1Gh0.

[8] *Everything in Your Family's Life Is an Opportunity to Explore*, Evenflo, https://www.evenflo.com/safety-learning/safety-learning.html (emphasis added) (last visited Apr. 2, 2020).

9.      Plaintiff brings this action to hold Evenflo accountable for its improper marketing and sales tactics that have prioritized profits over the safety of children.

## II.      PARTIES

10.     Plaintiff Lauren Mahler is a resident of Clarks Summit, Pennsylvania, in Lackawanna County.

11.     Defendant Evenflo Company, Inc., is a Delaware corporation, and is a wholly-owned subsidiary of Goodbaby International Holdings Limited. Evenflo is headquartered in Canton, Massachusetts.

## III.      JURSIDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendant are citizens of different states.

13.     The Court has personal jurisdiction over Evenflo because Defendant is headquartered in Canton, Massachusetts and conducts business in this District.

14.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant is a resident of Canton, Massachusetts, which is located in this judicial district.

## IV.      FACTUAL ALLEGATIONS

### A.      The Importance of Car Safety Seats in Protecting Children

15.     Child safety seats are critical to protecting children. "In the U.S., nearly 250,000 children are injured every year in car crashes, and approximately 2,000 die from their injuries. Moreover, the child passenger fatality rate in the U.S. is at least double that of other comparable

wealthy nations, including Sweden, Japan, U.K., Italy and Norway. Most of these fatalities and injuries are preventable."[9]

16.    The American Academy of Pediatrics ("AAP") similarly notes that, "motor vehicle crashes continue to be the leading cause of death for children 4 years and older"[10] but that "[c]urrent estimates of child restraint effectiveness indicate that child safety seats reduce the risk of injury by 71% to 82% and reduce the risk of death by 28% when compared with children of similar ages in seat belts."[11]

17.    Child safety seats are thus critical to protecting children against one of the greatest threats to their safety: automobile accidents. In the 1970s, increasing awareness of the dangers presented to young passengers resulted in rapid proliferation of state laws on the issue, with all fifty states adopting some requiring the use of some sort of child car safety seat by 1985.[12]

18.    Beginning in the late 1980s and early 1990s, the National Highway Traffic Safety Association ("NHTSA") and the AAP, began to developed child passenger safety standards and to better protect children from injuries in the event of an auto accident.

19.    Choosing the correct child safety seat depends on a child's age, height, and weight, with children progressing from rear-facing car seats with an internal five-point harness, to front-facing car seats with an internal harness, to a belt-positioning booster seats (which use the car seat belt and do not have an independent harness system).

---

[9] Jin Yung Bae et al., *Child Passenger Safety Laws in the United States, 1978–2010: Policy Diffusion in the Absence of Strong Federal Intervention* at 2, Nat'l Inst. of Health, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3899584/pdf/nihms543165.pdf (citations omitted) (100 Soc. Sci. & Med., Jan. 2014, at 30-37).

[10] Dennis R. Durbin & Benjamin D. Hoffman, *Child Passenger Safety*, 142 Pediatrics, Nov. 2018, at 1, https://pediatrics.aappublications.org/content/pediatrics/142/5/e20182460.full.pdf.

[11] *Id.* (citations omitted).

[12] Yung Bae et al., *supra* note 9, at 2.

20.     Beginning in the early 2000s, companies began producing booster seats designed for children who had outgrown (with respect to height or weight) their internal harness car seats but were too small to wear a seat belt properly. The belt-positioning booster seat elevates a child so that the car seatbelt fits properly. Around this same time, many states began passing regulations requiring toddlers to use child safety seats.

21.     Recommendations with respect to child safety seats—both "car seats" and "booster seats"—have changed over time. But one fact has remained consistent throughout these changes: children are better protected in harnessed car seats, particularly in the event of a side impact collision, and should be kept in a harnessed car seat as long as possible.

22.     For example, in 2011, the AAP advised parents to keep their toddlers in rear-facing car seats "until age 2, or until they reach the maximum height and weight for their seat. It also advises that most children will need to ride in a belt-positioning booster seat until they have reached 4 feet 9 inches tall and are between 8 and 12 years of age."[13] In its 2011 Policy Statement, the AAP made the following evidence-based recommendations:

> (1) rear-facing car safety seats for most infants up to 2 years of age; (2) forward-facing car safety seats for most children through 4 years of age; (3) belt-positioning booster seats for most children through 8 years of age; and (4) lap-and-shoulder seat belts for all who have outgrown booster seats.[14]

23.     Issued in 2018, the AAP's most recent evidence-based, best practices for optimizing child safety are as follows:

> 1.     All infants and toddlers should ride in a rear-facing car safety seat (CSS) as long as possible, until they reach the highest weight or height

---

[13] *AAP Updates Recommendations on Car Seats*, AAP (Mar. 21, 2011), https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAP-Updates-Recommendation-on-Car-Seats.aspx.

[14] *Policy Statement—Child Passenger Safety*, 127 Pediatrics, Mar. 2011, at 788, https://pediatrics.aappublications.org/content/pediatrics/early/2011/03/21/peds.2011-0213.full.pdf.

allowed by their CSS's manufacturer. Most convertible seats have limits that will permit children to ride rear-facing for 2 years or more.

2.      All children who have outgrown the rear-facing weight or height limit for their CSS should use a forward-facing CSS with a harness for as long as possible, up to the highest weight or height allowed by their CSS's manufacturer.

3.      All children whose weight or height is above the forward-facing limit for their CSS should use a belt-positioning booster seat until the vehicle lap and shoulder seat belt fits properly, typically when they have reached 4 ft 9 inches in height and are between 8 and 12 years of age.[15]

24.      According to the AAP, "Booster seats are for older children who have outgrown their forward-facing seats."[16] Those are seats for smaller children that incorporate harnesses in the restraint system. Boosters are for children in the transitional growth stage between the use of the more secure harnessed seat and the physical stature to fit in the vehicle's supplied seat belt. "It is best for children to ride in a seat with a harness as long as possible, at least to 4 years of age," AAP continues.[17]

25.      The AAP's policy on booster seats makes clear that to encourage use of boosters with children still small enough to use a harnessed seat is to invite unnecessary risk.[18] The image below shows the difference between a harness seat, left, and a booster, right:[19]

---

[15] Durban & Hoffman, *supra* note 10, at 2.

[16] *Booster Seats for School-Aged Children*, Healthy Children (Feb. 24, 2020), https://www.healthychildren.org/English/safety-prevention/on-the-go/Pages/Booster-Seats-for-School-Aged-Children.aspx.

[17] *Forward-Facing Car Seats for Toddlers & Preschoolers,* Healthy Children (Feb. 24, 2020), https://www.healthychildren.org/English/safety-prevention/on-the-go/Pages/Forward-Facing-Car-Seats-for-Toddlers-Preschoolers.aspx.

[18] *Id.*

[19] *Supra* note 7.



## B.    Evenflo's Development and Marketing of Child Safety Seats

26.    For a century, Evenflo and its predecessor corporate entities have been selling baby and child products to parents around the world. For most of those years its business was primarily devoted to baby feeding products, as the name suggests. Its rubber nipple and threaded flange were ubiquitous equipment in any household where small children were not yet drinking from cups. The company, founded as Pyramid Rubber Company in Ravenna, Ohio in 1920, branched into various subsidiaries with the Evenflo title and sold juvenile products and furniture along with the feeding equipment.[20]

27.    In 1995, the different manufacturing concerns were consolidated under the name Evenflo Company, Inc. and this was followed by a wave of acquisitions which eventually saw the company divide between its feeding business and its other products. The baby feeding business was sold to Kimberly-Clark de Mexico in 2012, and in 2014 Evenflo Company, Inc. was sold to

---

[20] *Evenflo*, Wikipedia (Mar. 4, 2020), https://en.wikipedia.org/wiki/Evenflo; *About Evenflo*, Evenflo, https://www.evenflo.com/about/about-us.html (last visited Apr. 2, 2020).

Goodbaby International Holdings Limited ("Goodbaby International"), a China-based conglomerate that trades on the Hong Kong Stock Exchange. This is the Evenflo company that manufactures children's car seats and strollers.[21]

28.    In or around 2018, Evenflo relocated its headquarters from Miamisburg, Ohio to Canton, Massachusetts.[22] Evenflo has a factory in Dayton, Ohio, one in Tijuana, Mexico, and nine other manufacturing facilities spread between three cities in China.[23]

29.    The acquisition of Evenflo by Goodbaby International recognized the huge and growing market for juvenile safety products and made Goodbaby International instantly influential in the marketplace. The 2014 announcement of the impending sale stated:

> Evenflo . . . has been committed to quality, safety and best-in-class products. Evenflo principally engages in the design, research and development, manufacturing, marketing and sale of *Evenflo*, *Exersaucer* and *Snugli* branded juvenile products. Its comprehensive product portfolio includes car seats, travel systems, safety gates, high chairs, play yards, stationary activity centers, infant carriers and doorway jumpers. Evenflo commands high consumer awareness and holds top market shares in the United States and Canada. Over 70% of Evenflo sales are manufactured in their Piqua, Ohio, and Tijuana, Mexico facilities. Over 90% of Evenflo's 2013 revenues are traced to the United States and Canada whose Evenflo brands are sold through key retailers such as Wal-Mart, Toys 'R' Us, Target and Amazon.
> . . .
>
> Evenflo's leading position in the car seat product category is expected to further expand Goodbaby's product portfolio to include mid-to-value child safety car seats. The broader portfolio combined with Goodbaby's product development focus on car seats, enables Goodbaby to capture significant share in the rapidly growing global car seat market.
> . . .
>
> [E]venflo was founded in 1920 and is a top supplier of infant and juvenile products to key retailers such as Toys "R" Us, Babies "R" Us, Wal-Mart, Target, Buy Buy

---

[21] *Id.*

[22] Cecilia Salomone & John Bush, *Evenflo to Move Headquarters Out of Dayton Region*, Dayton Bus. J. (May 8, 2018), https://www.bizjournals.com/dayton/news/2018/05/08/evenflo-to-move-hqout-of-dayton-region.html.

[23] *The World of Goodbaby*, Goodbaby International, http://www.gbinternational.com.hk/ (last visited Apr. 2, 2020).

Baby and Kmart. The company's product offering spans a broad range of essential infant and juvenile product categories. Evenflo's premier brand name has 96 percent awareness with new mothers, and the company enjoys #1 or #2 market share positions in several product categories.[24]

30.    Business has been good for Evenflo since its absorption by Goodbaby International. To date, the company "has sold more than 18 million Big Kid boosters," aided by its aggressive pricing and the myth that it created about the safety standards that it observes.[25]

**C.    Evenflo's Deceptive Marketing**

31.    In a battle for market share with its main competitor Graco, Inc. after the introduction of the new transitional "booster" style seat, Evenflo lowered prices and used a variety of different specifications for use of its seat, the Big Kid booster.[26] Evenflo also used extravagant displays and descriptions of its claimed safety features.

32.    Evenflo marketed its Big Kid booster seat as "the best way to minimize injuries to your child" and claimed that it would "greatly reduce the risk of serious injury to your child in a crash."[27]

33.    The Big Kid booster seat became a top seller for Evenflo and was sold at major retailers nationwide, including Amazon, Walmart, and Target.

34.    The story published by ProPublica on February 6, 2020, disclosed that the company ignored the warnings of Eric Dahle, the Director of Evenflo Manufacturing Engineering, who in 2012 recommended against the company selling booster seats such as its Big Kid model for use

---

[24] *Evenflo to Be Acquired by Goodbaby International*, Bus. Wire (June 6, 2014), https://www.businesswire.com/news/home/20140606005328/en/Evenflo-Acquired-Goodbaby-International#.VYLXNE1REdV.

[25] Porat & Callahan, *supra* note 4.

[26] *Id.*

[27] *Evenflo Big Kid/Right Fit Booster Seat Owner's Manual* at 1, Evenflo (June 2013), https://www.evenflo.com/on/demandware.static/-/Sites-evenflo-Library/default/dw4a961203/instruction-manuals/car-seats/booster/25703198-BK%20Right%20Fit-EN.pdf.

with children under 40 pounds. Deposition testimony from Dahle in 2019 included his opinion that were a child to be thrust from the booster in a side impact similar to the one involving the dummy in the test film, catastrophic injury or death was a possible consequence.[28]

35.     The AAP recommends that children ride in a seat with a harness as long as possible. Contrary to these recommendations, Evenflo marketed the Big Kid booster specifically to parents who found the more complex harness system bothersome to use. "The company's ad campaigns highlighted the frustration parents could expect when putting their children in seats with a harness, promoting the fact that their booster was easier to use."[29]

36.     Dahle also admitted that Evenflo's tests do not measure injury criteria in side impacts. Internal documents and leaked videos reveal tests in which child-sized dummies were thrown violently out of seat containment during side-impact simulations. But in those tests, which were designed and run by Evenflo and not a regulatory body, the only standard of failure was if the dummy was entirely ejected from the booster, or if the seat itself was broken into pieces. The booster seat went to market based on passing evaluations after those measurements of its performance in accident conditions.[30]

[28] Porat & Callahan, *supra* note 4.
[29] Yasmin Gagne, *Design Fail: Evenflo Allegedly Sold Unsafe Car Booster Seats*, Fast Company (Feb. 7, 2020), https://www.fastcompany.com/90461426/evenflo_booster_seat?partner=rss&utm_source=rss&utm_medium=feed&utm_campaign=rss+fastcompany&utm_content=rss?cid=search.
[30] Porat & Callahan, *supra* note 4; *supra* note 7.



37.     In the wake of the ProPublica story, a congressional subcommittee has launched an investigation of Evenflo. Rep. Raja Krishnamoorthi, D-Ill. and Rep. Katie Porter, D-Calif., members of the U.S House Committee on Oversight and Reform's Subcommittee on Economic and Consumer Policy, requested records from Evenflo that relate to the testing, labeling, and other records related to its marketing of the Big Kid and other booster seats.[31]

**1.      Evenflo's Misleading Marketing with Respect to Side-Impact Protection**

38.     The Big Kid booster seat was developed partly to compete with a competitor model sold by Graco, Inc.

39.     In order to boost the appeal of the Big Kid seat, and the perception that it offered side impact protection, in 2008 Evenflo added plastic wings to its product to increase its appeal.

---

[31] Callahan, *supra* note 3.

"[M]arketing documents state that an advantage of this strategy was increased 'perceived side protection,' but tests show the new seat was no better at protecting children than the older model."[32]

40.    This Evenflo internal marketing document touted the "perceived side protection":[33]

**Product Definition & Strategy**

The project scope includes redesigning the back of the Booster seat in order to provide for m[...] and shoulder areas.  The shell will also receive more structural support.

Consumer benefits is the increased perceived side protection, shoulder support and comfort [...] provide.  In addition this transparent change will come at no cost to the consumer, while build[...]

The Big Kid is the reliable workhorse in the Evenflo platform stable and is expected to continu[...]

41.    Evenflo knew, however, that the added side wings did not in fact afford side impact protection. Instead, Evenflo concealed the truth about the side wings and touted the "side impact testing" its product to mislead consumers. When Evenflo launched the Big Kid booster with side wings, it aggressively marketed that the seat was "Side Impact Tested."

42.    For example, Evenflo prominently labeled its booster seats as side impact tested, as on the circled labels below:[34]

---

[32] Gagne, *supra* note 29.
[33] *Supra* note 7.
[34] *Id.*



43.    A close-up of the tags affixed to the seat show as follows:[35]



---

[35] Porat & Callahan, *supra* note 4; *supra* note 7.

44.    One marketing pitch read: "Knowing that one in four automobile accidents are side impact collisions, we believe it's important to go beyond the current government standards when designing the next generation of Evenflo car seats, including the Big Kid LX[.]"[36]

45.    On a corporate blog called "The Safety Net," Evenflo boasted that its "rigorous test simulates the government side-impact tests conducted for automobiles."[37]

46.    On its own website, Evenflo boasts that it is "committed to providing child safety through research, testing, design, and community" and that, with respect to side-impact testing, its child booster seat product line "Meets or exceeds all applicable federal safety standards and Evenflo's Side impact standards."[38]



47.    In truth, the federal government has no side-impact testing rules or standards for child safety seats. Evenflo conceals this fact. And Evenflo's representation that it surpasses those

---

[36] Porat & Callahan, *supra* note 4.

[37] *Id.*

[38] *Safety Technology*, Evenflo, https://www.evenflo.com/safety-learning/safety-tech.html (last visited Apr. 2, 2020).

supposed standards is obviously misleading and omits material facts necessary to make its statements not misleading.

48.     To the extent that the federal government has side-impact tests, they are far more rigorous than those performed by Evenflo. Those tests include:

A.     Side barrier crash test scenario: a 3,015 lb moving barrier crashes at 38.5 mph into a standing vehicle.[39]

B.     Side Pole Crash Test Scenario: vehicle, angled at 75 degrees, is pulled sideways at 20 mph into a 25cm diameter pole at the driver's seating location.[40]

49.     Evenflo, however, made up its own tests. "The Evenflo side-impact tests, by contrast, were conducted on a bench resembling a vehicle's seat that moves at 20 miles per hour and is suddenly decelerated. It has no barrier smashing into the bench and no pole."[41]

50.     Evenflo nevertheless claimed on its website:[42]



**Evenflo Side Impact Testing**

Evenflo Side impact testing simulates a crash in which the vehicle carrying the car seat is struck on the side by another vehicle. An example of a real life side impact collision is when a car crossing an intersection is struck on the side by another car that ran a stop sign.

51.     ProPublica reports, however, that Evenflo's tests were insufficient, with no reasonable basis:

In reality, Evenflo tests were anything but stringent, internal company documents show. The company's tests show that when child-sized crash dummies seated in Big Kid boosters were subjected to the forces of a T-bone collision, they

---

[39] *Ratings—Car Seats*, NHTSA, https://www.nhtsa.gov/ratings (last visited Apr. 2, 2020).
[40] *Id.*
[41] Porat & Callahan, *supra* note 4.
[42] *Supra* note 38.

were thrown far out of their shoulder belts. Evenflo's top booster seat engineer would later admit in a deposition if real children moved that way, they could suffer catastrophic head, neck and spinal injuries — or die.

Yet Evenflo gave its seats passing grades. Indeed, the company's test bar was so low, the only way to fail was if the child-sized dummy ended up on the floor or the booster itself broke into pieces.[43]

52.    Although Evenflo marketed different versions of the Big Kid seat with variations in fabric, base, and model number, all of the Big Kid booster seats performed similarly in testing. An Evenflo senior test technician said in his deposition that he sent his test reports to an engineer who would decide whether the Big Kid passed or failed; they all passed.[44]

53.    Videos from Evenflo's testing records showed the new Big Kid with side wings did no better than the version without wings. "The dummies in the seat with wings were just as prone to lurching far outside the seat, with their seat belts slipping off their shoulders and straining at their abdomens."[45] Tests showed the head, neck, and spine "vulnerable to serious injuries."[46]

54.    Dr. Ben Hoffman, a pediatrician and lead author of the AAP's car seat recommendations, viewed videos of Evenflo's testing. He said "such violent movement at high speed of the dummy in the booster could lead to abdominal, brain and spinal injuries in a real child, including paralysis or death. This looks horrific, and I can't imagine it being in any way shape or form better under real life circumstances[.]"[47]

55.    Dr. Hoffman stated in another interview: "I think the word that I used to describe them initially was horrific. Human beings just aren't built to survive that amount of movement."[48]

---

[43] Porat & Callahan, *supra* note 4.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *"Horrific" Side Crash Test Videos Raise Safety Concerns About Some Car Booster Seats*, CBS News (Feb. 6, 2020), https://www.cbsnews.com/news/evenflo-car-booster-seat-propublica-investigation-raises-concerns-over-some-of-the-companys-safety-claims/.

56.    In 2016, an Evenflo project engineer named David Sander defended the company's obfuscation of the dangers presented by inappropriate use of the Big Kid booster seat. In his deposition, he insisted that parents should not misinterpret the seat labels that boast of testing for side impacts. "We side impact test our seats," he said, "but I don't think we say that we offer any type of side impact protection."[49]

57.    Perhaps the most alarming fact of Evenflo's marketing behavior is that with clear evidence of the potential for catastrophic injury and death among children who are placed in the Big Kid booster, the company set its own stunningly low standard for passage of the side impact test. It brags even in its current advertising that:

> "Our approach to safety testing has been to not just meet the requirement, but to go above and beyond. An example of this is the fact that Evenflo tests all car seats to energy levels approximately twice that of the federal crash test standard."[50]

58.    Yet it is entirely conceivable that a child rather than a dummy subjected to the forces of that test, improperly restrained in a booster seat because unsuspecting parents were unaware of the danger, could sustain an injury such as atlanto-occipital dislocation, better known as "internal decapitation." This is when the occipital bone at the rear of the skull separates from the atlas, the uppermost vertebral bone in the spine; the skull separates from the spine yet all body elements remain within the skin. It can occur when whiplash energy propels the skull hard enough to delink the bones. It's more common in children than adults due to the larger proportional size of their heads, and in one hospital study was survived by only 31% of child victims.[51]

---

[49] Porat & Callahan, *supra* note 4; *supra* note 7.
[50] *Supra* note 8.
[51] Rachael Rettner, *What Is Internal Decapitation and How Did Child Survive?*, CBS News (June 9, 2016), https://www.cbsnews.com/news/what-is-internal-decapitation-how-did-boy-survive/.

59.     One such survivor is Jillian Brown. On the way to day care one morning in 2016, 5-year-old Jillian and her mother and sister were struck on the driver's side of their Suzuki Forenza. The impact hurled Jillian, who weighed 36 pounds, out of the containment of her Evenflo Big Kid booster seat. She was unresponsive when first responders arrived.

60.     Jillian's father had bought the seat two years before, unaware that it posed a grave danger for his daughter, who belonged in a harness seat. He related in a deposition that he chose the Big Kid booster because of the prevalence of the word "safety" on the carton. The damage to Jillian's spinal cord from the accident has left her with no voluntary control of her arms, legs, hands, or feet.



**Jillian Brown, injured in a side impact crash while seated in an Evenflo booster**

61.     Evenflo knew that its Big Kid Booster seat provided no side impact protection and, in fact, would allow a child to be ejected from the confines of the seat.  Evenflo knew that a side-

impact could cause a belt to fall out of position and subject a child to catastrophic injuries. Yet Evenflo callously marketed the Big Kid booster seat as safe and touted its side impact protection.

      **2.**      **Evenflo Falsely Markets the Big Kid Booster Seat as Safe for Children Under 40 Pounds**

62.     In addition to falsely marketing its Big Kid booster seat as side-impact tested and failing to reveal critical information with respect to its "side-impact testing," Evenflo claimed that the Big Kid booster seat was safe for children weighing as little as 30 pounds.

63.     The injury potential is significant with the Big Kid booster seat when it is used improperly, and the injuries are not limited to the atlanto-occipital dislocation. The primary reason for improper use is that Evenflo has suggested its use in inappropriate situations, such as when a child is still small enough to fit a harness seat. When it printed and distributed charts and tables indicating that a child of three weighing 30 pounds could use it safely, and when it boasted of side impact testing that had no effect whatsoever on the safety of its product, Evenflo was deliberately falsifying the risk that it knew existed.



**Evenflo's 2014 standard for booster use**

Keep your child safe and sound in your vehicle by offering them a booster car seat with built-in protection. The Big Kid DLX booster car seats from Evenflo feature increased padding for added cushion. Evenflo goes above and beyond to offer savvy parents a booster car seat that is designed and tested for structural integrity at energy levels approximately 2X the federal crash test standard. Additionally, the Big Kid booster car seats grow with your child up to 110 lbs.

The Big Kid DLX Booster Car Seats also feature:

- Kid-Friendly Acitivty Lights - Dual lights for long trips and evening activities
- 2-In-1 Booster - Removable back for easy transition to a no-back booster
- Padded armrests are height adjustable and pivot for easy entry and buckling
- Full Body Adjustment - Easy! One-hand, 6-position height adjustment
- 2 cupholders with activity trays for drinks and snacks
- Padding at key support areas provides cushion for child
- Seat pad removes easily for machine-washing
- Side Impact Tested! Evenflo booster car seats meet or exceed all applicable federal safety standards and Evenflo's side impact standards.
- Designed and tested for structural integrity at energy levels approximately 2X the federal crash test standard
- Includes EPS, energy-absorbing foam

Use & Care

- The Bid Kid Booster With Backrest is for use with children 30 – 110 lbs, 38 – 57 inches tall and that are at least three years old or older.

**Marketing material describing the Big Kid booster seat in 2012**

64.    This endorsement was posted on February 6, 2020, as part of a blog that reviewed

"The 5 Best Evenflo Big Kid Booster Seats":

> **One of the more popular big kid booster seats, you'll love all the features and safety for the respectable middle of the road price of $39.99.**[52]

65.    Corporate strategy intends for Evenflo products to sell at competitive prices, as

expressed in Goodbaby International's acquisition announcement:

> The acquisition allows Goodbaby International to further develop its brand portfolio of safe, innovative, fashionable, and easy-to-use juvenile durable products to spread across all price points. The Group's GB and CYBEX brands are already well-established in the mid to high price points segments. Evenflo's positioning as

---

[52] Keren Simanova, *The 5 Best Evenflo Big Kid Booster Seats*, Car Seats Mom (Feb. 6, 2020), https://carseatsmom.com/evenflo-big-kid-booster-seats/ (emphasis added).

a mid-end to value brand completes the Group's offerings to service global consumers across all price points.[53]

66.    Contrary to Evenflo's marketing, there is a wealth of information that booster seats are not safe for children under 40 pounds.

67.    Engineer Dahle's warning to the company in 2012, when he strongly advised against selling the seats with a minimum weight recommendation of less than 40 pounds, essentially stated that children under that weight should be restrained with harnesses. Harnesses are demonstrably more effective in preventing small bodies from flying out of the seat enclosure, and subjecting heads, necks, and limbs to overwhelming force and counterforce.

68.    In addition to ignoring the warnings of its own safety engineers, Evenflo ignored the warnings of the AAP and other evidence, including the requirements in other countries (such as Canada).

69.    Since 1989, the AAP has recommended that a booster seat be used only with children weighing more than 40 pounds.

70.    The AAP's recommendation in this regard has not changed. The AAP reiterated this position in a 2011 Policy Statement that indicated that children should remain in child seats with integrated harnesses as long as possible and that booster seats were not for children under 40 pounds.[54]

71.    Even in 2012, after revising the instruction manual for the Big Kid booster, Evenflo maintained a minimum weight of 30 pounds.

---

[53] *Goodbaby International Announces Acquisition of Leading U.S. Juvenile Products Brand Evenflo*, Evenflo (June 6, 2014), https://www.evenflo.com/news/news-2014-06-06a.html.
[54] *See supra* note 14.

72.    As marketing executives at the time made clear, Evenflo had no interest in the recommendation of the AAP. "Why are we even talking about this?" wondered one vice president. "I have looked at 40 lbs for the US numerous times and will not approve this."[55]



73.    Evenflo continued to market its product as safe for children under 40 pounds:



74.     Canada provides an apt comparison. Evenflo markets the Big Kid booster seat in Canada, which prohibits marketing booster seats for use with children under 40 pounds. In general, Evenflo informs Canadian consumers that the Big Kid booster was specifically designed for children weighing between 40 and 100 pounds and that a 30 pound child would be at risk of death or serious injury. "Across the border in Canada, Evenflo told parents in bold capital letters that a child less than 40 pounds risked "SERIOUS INJURY or DEATH" using the same model of Big Kid."[56]

---

[56] *Id.*

75. Evenflo made no such disclosures to American consumers and, instead, concealed the risks presented by use of the Big Kid booster with children less than 40 pounds. In fact, Evenflo originally marketed the Big Kid in the United States with no age or weight recommendation at all.

76. Even in Canada, however, Evenflo has had its booster seats recalled three times in Canada for misrepresenting that they were suitable for children weighing as little as 30 pounds.

77. Most recently, in August 2012, Evenflo initiated a product alert, when it informed Transport Canada that 500 Big Kid booster seats containing French labels showing a weight range of 10-18 kg (22-40 lbs.) had been shipped to retailers. These labels appeared alongside English labels showing the correct range of 40-110 lbs. In this instance, replacement labels were provided to all affected retailers and consumers.[57]

## Evenflo Big Kid AMP – incorrect height and weight label

From: Transport Canada

TP 14566 - Public Notice
Child Restraint Systems
2012-P06 E
August 17, 2012

Road Safety
Information: 1-800-333-0371

Manufacturer:
Evenflo Company, Inc.
1801 Commerce Drive
Piqua, OH 45356 USA

---

[57] *Evenflo Big Kid AMP - Incorrect Height and Weight Label*, Gov't of Canada (Aug. 17, 2012), https://www.tc.gc.ca/en/services/road/defects-recalls-vehicles-tires-child-car-seats/alerts-notices/evenflo-big-kid-amp-incorrect-height-weight-label.html.

**Issue:**

Evenflo Company, Inc. and Transport Canada wish to inform the public of an error on a French label affixed to certain Big Kid AMP Booster Car Seats which were manufactured on June 29, 2012. The text-only section of the French on-product label of affected units has incorrect height and weight ranges for use of the restraint in backless mode. Specifically, when used in backless mode, the subject units have a correct weight range of 18-49.8 kg (40-110 lbs), and a correct height range of 102-145 cm (40-57in), as indicated on the English label. In contrast, the text section of the French label of the affected units states a weight range of 10-18 kg (22-40lbs) and a height range of 71-127 cm (28-50 in) in backless mode. It should be noted that the graphic representation of the French label includes the correct information.

**2012 Canadian alert initiated by Evenflo.**

78.     Evenflo manufactured its own passing results to go with its seats. Part of the sales pitch for these boosters is the fact that they are faster and easier to clip into and go. Left out is the material information that young children not large enough to fit a vehicle's own belt system should instead be secured within a harness system.



**Stage 3: booster seats**

**Booster seats are designed for children who have outgrown their forward-facing seat and weigh at least 18 kg (40 lb).** A booster seat helps children sit comfortably by raising them up so they can sit up against the seatback with their knees bent over the edge of the booster or vehicle seat. Even if a booster seat meets Canadian regulations, the booster seat you choose needs to fit your child, and your vehicle.

For tips on choosing a booster seat that fits, go to Stage 3: booster seats.



**Stark difference in seat performance.[58]**

79.    Regulatory guidelines and common sense are in common use across a broad spectrum of products designed to enhance safety for children. But they are useless if ignored. And that is what Evenflo did when it decided to be the sole judge of its compliance with acceptable standards for keeping children safe.

**D.    Plaintiff Purchased an Evenflo Booster Based on Defendant's Representations and Omissions**

80.    Plaintiff Lauren Mahler lives in Clarks Summit, Pennsylvania. Two years ago, she bought an Evenflo "Big Kid" booster seat, Model D-51, at the Wal-Mart in Dickson City, Pennsylvania. She used the seat on a daily basis for her granddaughter, who was four years old at the time of purchase.

81.    Ms. Mahler bought the booster seat at least in part because Evenflo advertised it as passing side-impact testing, an important consideration for her because of her concern for the

---

[58] *Supra* note 7.

safety of her granddaughter. The Bid Kid model she purchased boasted on the outside of the box in which it came that it was side-impact tested, and that safety was Evenflo's "#1 PRIORITY":



82.     The same box also represents that the booster is designed to twice the "federal crash test standards":



83.     Had Ms. Mahler known the truth about Evenflo's side-impact testing claims, she would not have purchased the booster seat, or at least would have paid substantially less for it.

## V.     TOLLING OF ANY APPLICABLE STATUTES OF LIMITATIONS

### A.     Discovery Rule

84.     The discovery rule delays the date on which a statute of limitations starts to run. Despite their diligence, Plaintiff and class members did not discover and could not have discovered the facts that form the basis for their causes of action on the day the conduct occurred. In particular, Plaintiff and class members had no ability to know that Evenflo was misrepresenting the safety qualities of its booster seats.

85.     Plaintiff had the reasonable expectation that Evenflo would only advertise its booster seats for circumstances in which it knew its performance was adequate.

86.     Defendant did not inform Plaintiff or class members of this misconduct.

87.     Any statutes of limitation otherwise applicable to any claim asserted have been tolled under the discovery rule by the inability of Plaintiff and the class members to have a reasonable opportunity to discover, in real time, the unlawful injury giving rise to this complaint.

**B.     Equitable Tolling**

88.     Equitable tolling pauses of the statute of limitations after it has begun. Plaintiff did not know about Evenflo's misconduct until, at the earliest, public reporting of that misconduct in early 2020.

89.     Because there was excusable delay by Plaintiff and the class members for bringing claims, any statutes of limitation have been tolled by the doctrine of equitable tolling until the discovery of the conduct giving rise to this complaint.

**C.     Estoppel**

90.     Evenflo was under a continuous duty to inform Plaintiff and the class members that its booster seat did not work as advertised. Evenflo did not do so. This delay increased the harm to Plaintiff and the class members. Because of Defendant's concealment of their misconduct, Plaintiff and class members did not and could not know of the existence of their claims when they arose. Evenflow is therefore estopped from relying on statutes of limitation in defense of this action

## VI.     CLASS ACTION ALLEGATIONS

91.     Plaintiff brings this action individually and on behalf of all other persons similarly situated under Federal Rule of Civil Procedure 23.

**The National Class:** All persons in the United States who purchased an Evenflo Big Kid booster seat from 2008 through the present.

**The Pennsylvania Class:** All persons in the State of Pennsylvania who purchased an Evenflo Big Kid booster seat from 2008 through the present.

92.    Excluded from the National Class and the Pennsylvania Class (collectively "Classes") are: Defendant and any entity in which the Defendant has a controlling interest, as well as any of the Defendant's agents, legal representatives, officers, directors, assignees, and successors, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

93.    Plaintiff reserves the right to amend the foregoing class definitions and exclusions.

94.    Members of the Classes are so numerous and geographically dispersed that joinder of all members is impracticable. During the Class period, millions of Big Kid models were sold to millions of individual customers. Class members are readily identifiable from information and records in the possession of Evenflo and third-party merchants.

95.    Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and all Class members were damaged by the same wrongful conduct: as a result of Evenflo's failure to disclose the risks associated with using Big Kid booster seat models, as well as its false and misleading claims that these models were "side-impact tested," Plaintiff and Class members were misled into purchasing these seats—which they otherwise would not have purchased.

96.    Plaintiff will fairly and adequately protect and represent the interests of the Classes. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Classes.

97.    Plaintiff's lead counsel are experienced in the prosecution of class-action litigation and have particular experience with class-action litigation involving defective products.

98.    Questions of law and fact common to the members of the Class predominate over

questions that may affect only individual Class members because Evenflo has acted on grounds generally applicable to the entire Classes, thereby making damages with respect to the Class as a whole appropriate. Such generally applicable conduct is inherent in Evenflo's wrongful actions

99.    Questions of law and fact common to the Classes include, but are not limited to:

A.    Whether the Big Kid booster seat models sold to class members by Evenflo are unsafe in side-impact crashes;

B.    Whether Evenflo knew, or had reason to know, that its Big Kid booster seat models were unsafe in side-impact crashes;

C.    Whether Evenflo acted to conceal from consumers evidence, including proprietary test data, demonstrating that its Big Kid booster seat models are unsafe in side-impact crashes;

D.    Whether Evenflo affirmatively misrepresented the safety of its Big Kid booster seat models as "side impact tested";

E.    Whether Evenflo's conduct was knowing and willful;

F.    Whether Evenflo's failure to disclose the safety risks posed by use of its Big Kid booster seat in its product packaging and labeling (or elsewhere) was unfair, deceptive, fraudulent, or unconscionable;

G.    Whether Evenflo is liable to Plaintiff and Class members for damages under state consumer protection statutes;

H.    Whether an injunction should be issued requiring Evenflo to: (i) recall all Big Kid model booster seats still in use; (ii) cease selling Big Kid model booster seats; and/or (iii) add labeling to all future Big Kid model booster seats warning consumers of the dangers associated with their use; and

I.      Whether Plaintiff and Class members are entitled to attorneys' fees, prejudgment interest, and costs, and if so, in what amount.

100.    Plaintiff and Class members have all suffered harm and damages as a result of Evenflo's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism—including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually—substantially outweigh potential difficulties in management of this class action. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive and will have no effective remedy at law. The class treatment of common questions of law and fact also is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. Additionally, Evenflo has acted and failed to act on grounds generally applicable to Plaintiff and the Classes and that require court imposition of uniform relief to ensure compatible standards of conduct toward the Class, thereby making appropriate equitable relief to the Class as a whole within the meaning of Rules 23(b)(1) and (b)(2).

101.    Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## VII.    CLAIMS FOR RELIEF

### Count I
### Implied or Written Warranty
### Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

102.    Plaintiff incorporates by reference the allegations in this complaint.

103.    Plaintiff brings this claim on behalf of the National Class.

104.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

105.    Plaintiff is "consumer[s]" under 15 U.S.C. § 2301(3).

106.    Evenflo is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5), respectively.

107.    Evenflo's Big Kid boosters are "consumer product[s]" under 15 U.S.C. § 2301(1).

108.    The amount in controversy of Plaintiff's individual claims meets or exceeds $25.00. In addition, the amount in controversy meets or exceeds $50,000 (exclusive of interest and costs) on the basis of all claims to be determined in this lawsuit.

109.    As alleged in this complaint, Evenflo provided Plaintiff and class members both "written warrant[ies]" and "implied warrant[ies]" under 15 U.S.C. § 2301(6) and (7) regarding the fitness of Big Kid boosters as child safety restraints. In addition, a 2013 owner's manual provided with a Big Kid that indicates the seat can be used for children as small as 30 pounds includes this limited warranty:[59]



**Limited Warranty**

For a period of 90 days from the original purchase of this Product, Evenflo warrants to the original end user ("Purchaser") this Product (including any accessories) against defects in material or workmanship. Evenflo's sole obligation under this express limited warranty shall be, at Evenflo's option, to repair or replace any Product that is determined to be defective by Evenflo and determined to be covered by this warranty.

---

[59] *Supra* note 27, at 24.

110.    When Plaintiff bought their Big Kid booster, Evenflo's warranties about the fitness of the booster seat were part of the benefit of their bargain. As the targets of Evenflo's warranties, Plaintiff was the intended third-party beneficiaries of the contracts between Evenflo and its distributors. The warranties were intended to benefit Plaintiff and class members, not the distributors through whom Evenflo sold the "Big Kid."

111.    Evenflo breached these warranties as described in this complaint because the Big Kid booster does not provide side-impact protection, only "perceived" side-impact protection, and the because the booster seat is not fit for use for children under 40 pounds. Evenflo's breach of these warranties were contrary to applicable state laws, which are incorporated by reference.

112.    Affording Evenflo a reasonable opportunity to cure its breach would be futile because Evenflo has denied that its booster seat is defected. For example, Evenflo's agent told ProPublica that Evenflo is a "pioneer" in side-impact testing that provide safe, effective, and affordable products.[60] Evenflo has not offered to refund or replace defective Big Kid boosters.

113.    Given Evenflo's egregious conduct concealing its product's defects, any attempt by Evenflo to disclaim the implied or written warranties it provided would be unconscionable, null, and void.

114.    Plaintiff suffered concrete and particularized harm because of Evenflo's breach of those warranties.

115.    Plaintiff seeks all damages permitted by law, including a refund of the purchase price of the Big Kid booster seat.

**Count II**
**Fraudulent Concealment**

116.    Plaintiff incorporates by reference the allegations in this complaint.

---

[60] Porat & Callahan, s*upra* note 4.

117.    Plaintiff brings this claim on behalf of the National Class under the fraudulent concealment laws of the states in which class members reside.

118.    In both affirmative representations and by omissions in its uniform marketing materials, Evenflow fraudulently concealed from consumers like Plaintiff the true safety characteristics of the Big Kid booster seat.

119.    By marketing the Big Kid booster seat as a child restraint safety device, Evenflo had a duty to accurately portray for what uses—and for which users—the seat should be used, and what testing it had performed to support such representations.

120.    Defendant failed to meet its duty to disclose facts material to Plaintiff and class members. Defendant failed to disclose, for example, that it knew the Big Kid booster seat's side-impact testing was not adequate or that booster seats should not be used for children under 40 pounds.

121.    As alleged above, Plaintiff relied on Evenflo's representations about the safety features of the Big Kid—those purported features were material to Plaintiff's decision to buy a Big Kid booster seat, as they would be for any reasonable purchaser. Evenflo counted on those representations being material—they made them to boost Big Kid sales.

122.    A reasonable consumer would not expect that a company that designed and sells child safety seats would misrepresent or omit key facts about the safety features of its products. Had Plaintiff known the truth, she would not have bought a Big Kid booster.

123.    Because of Evenflow's acts, Plaintiff has suffered harm, including the purchase price of their Big Kid booster seat.

124.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff; and to enrich itself. Its misconduct

warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**Count III**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**73 PA. STAT. ANN. § 201-1 ET SEQ.**

125.    Plaintiff incorporates by reference the allegations in this complaint.

126.    Plaintiff brings this claim on behalf of the Pennsylvania Class.

127.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pennsylvania UTPA), prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." 73 Pa. Stat. 16 Ann. § 201-3.

128.    The Pennsylvania UTPA prohibits representing that goods have characteristics, benefits, or qualities that they do not have; representing that goods are of a particular standard, quality or grade if they are of another; advertising goods with intent not to sell them as advertised and certified; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. Pa. Stat. Ann. § 201-2(4).

129.    Defendant and Plaintiff are "persons" within the meaning of 73 Pa. Stat. Ann. § 201-2.

130.    Defendant is engaged in "trade" or "commerce" within the meaning of 73 Pa. Stat. Ann. § 201-13 2(3).

131.    Plaintiff purchased an Evenflo Big Kid booster seat primarily for her personal, family, or household purposes within the meaning of 73 Pa. Stat. Ann. § 201-9.2.

132.    Evenflo's practices in connection with the sale of its Big Kid booster seat was fraudulent because Evenflo:

- misrepresenting the source, sponsorship, approval, or certification of its booster seat by advertising it for use by children too small, and by representing that it had safety qualities it did not;

- misrepresenting that its booster seat had certain quantities, characteristics, ingredients, uses, or benefits by advertising it for use by children too small, and by representing that it had safety qualities it did not;

- misrepresenting that its booster seat was of a particular standard, quality, grade, style, or model by advertising it for use by children too small, and by representing that it had safety qualities it did not; and

- using other deception, fraud, false pretense, false promise, or misrepresentation in connection with the sale of its booster seat, as alleged in this complaint.

133.    Evenflo intended to deceive Plaintiff with its statements about the safety qualities of its booster seat, as alleged in this complaint.

134.    Evenflo did, in fact, deceive Plaintiff, who relied on Evenflo's representations about the safety qualities of its booster seat when deciding to buy a Big Kid. Evenflo's representations and omissions were material to Plaintiff who not have purchased a Big Kid booster seat but for Evenflo's violations of the Pennsylvania UTPA.

135.    Plaintiff had no way of discerning that Evenflo's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff did not, and could not, unravel Evenflo's deception on her own.

136.    Evenflo had an ongoing duty to all Evenflo customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA.

137.    Plaintiff suffered ascertainable loss and actual damages as a direct and proximate result of Evenflo's concealment, misrepresentations, and/or failure to disclose material information.

138.    Evenflo's violations of the Pennsylvania UTPA present a continuing risk to Plaintiff, as well as to the general public. Evenflo's unlawful acts and practices complained of herein affect the public interest.

139.    Pursuant to 73 Pa. Stat. Ann. § 201-9.2(a), Plaintiffs seek an order enjoining Evenflo's unfair and/or deceptive acts or practices, and awarding damages, punitive and/or treble damages, and any other just and proper relief available under the Pennsylvania UTPA.

## VIII.    REQUEST FOR RELIEF

140.    Plaintiff, individually and on behalf of all others similarly situated, request that the Court enter judgment against Defendant, as follows:

A.    Certify the Classes and, under Federal Rules of Civil Procedure 23, appoint Plaintiff as representative of the Classes, and appoint the lawyers and law firm representing Plaintiff as counsel for the Classes;

B.    Require Evenflo to market and promote its Big Kid booster seat lawfully;

C.    Declare Evenflo's actions to be unlawful;

D.    Award injunctive relief, including public injunctive relief permanently enjoining Evenflo from performing further unfair and unlawful acts as alleged herein;

E.    Award all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Classes, including disgorgement, penalties, unjust enrichment, and all other relief allowed under applicable law;

F.    Grant Plaintiff and the Classes awards of restitution and/or disgorgement of Evenflo's profits from its unfair and unlawful practices described above;

G.     Award all costs of prosecuting this action, including attorneys' fees and expert fees as may be allowable under applicable law;

H.     Award both pre-judgment and post-judgment interest on any amounts awarded;

I.     Award treble damages insofar as they are allowed by applicable laws;

J.     Award appropriate individual relief as requested above; and

K.     Grant such other and further relief, including declaratory, injunctive, and equitable relief, as the Court may deem proper.

## IX.    JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 14th day of April, 2020.

**KELLER ROHRBACK L.L.P.**


*/s/ Amy Williams-Derry*
Amy Williams-Derry, Bar No. 568953
awilliams-derry@kellerrohrback.com
Gretchen Freeman Cappio *(pro hac vice forthcoming)*
gcappio@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Ave., Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384

Alison E. Chase *(pro hac vice forthcoming)*
achase@kellerrohrback.com
Matthew J. Preusch *(pro hac vice forthcoming)*
mpreusch@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497

*Attorneys for Plaintiff*

4830-9198-7638, v. 10